UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>                    Plaintiff,<br><br>vs.<br><br>HENRY ATENCIO, et al.,<br><br>                    Defendants. | Case No. 1:22-cv-00346-BLW<br><br>**ORDER OF SEVERANCE<br>AND ORDER ADDRESSING<br>PENDING MOTIONS** |

To facilitate the screening of this case, the Court ordered Plaintiff Kent Williams to file two amended complaints to separate his six years of prison conditions of confinement claims into two categories. One amended complaint was to include all those claims that appeared barred by the statute of limitations, and the other was to include those that did not. Dkt. 14. Plaintiff has filed his Amended Complaints. Dkt. 23, 24.

Based on the Court's review of Complaint 1, the Court will sever it into a new case. The court's power to order severance of claims "rests within [its] broad discretion … as an aspect of its inherent right and duty to manage its own calendar." *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978). Plaintiff will not be charged an additional filing fee for the severed case, and for statute of limitations purposes, Plaintiff may use

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 1**

the date of the filing where the claim was first raised or to which it relates back in this case.

The Court does not repeat the general case screening standards here, but refers Plaintiff to those set forth in the Initial Review Order. Dkt. 14.

## PRELIMINARY REVIEW OF COMPLAINT NO. 1 (DKT. 23)

### 1.  Conditions of Confinement in the Suicide Watch Unit

Complaint No. 1 contains conditions of confinement claims arising from the suicide watch unit that were exhausted before August 2020. The Clerk of Court will be ordered to sever the Complaint at Docket 23 into a separate case with a new case number.

Plaintiff asserts that he was wrongfully placed and repeatedly kept on suicide watch for refusing to answer medical providers' questions about whether Plaintiff felt suicidal, and he asserts that he was placed or kept there for nonlegitimate reasons. He also asserts that the conditions on suicide watch were unconstitutional, including continuous bright lights, providing only a smock for clothing, the cold cell temperature, bedding that is thin and inferior to regular cells, requiring an inmate guard to watch the suicide cell at all times, prohibiting calls to an attorney, permitting no hygiene items or water in the cell, issuing only three squares of toilet paper at a time, or other conditions not to include access to courts claims. Plaintiff asserts that the combination of these conditions created mentally and physically taxing living conditions rationally related to a legitimate penological reason.

### 2.  Access to Courts Claims

Plaintiff asserts that he lost his direct appeal and post-conviction action and that he anticipates losing some of his claims on federal habeas corpus review because of the access to the courts restrictions while he was housed in the suicide watch unit. Dkt. 23, pp. 13-15.

Under the First Amendment, prisoners have a right to access the courts for the purpose of filing of direct criminal appeals, habeas petitions, and civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 346, 354 (1996). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002).

To state a forward-looking access to courts claims, the plaintiff must allege facts showing that a prison employee's action is presently denying the plaintiff an opportunity to litigate. *Id*. at 413. This type of claims does not mean that "the opportunity has … been lost for all time … but only in the short term." *Id*. A forward-looking claim is expressly for the purpose of plac[ing] the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id*. at 413.

To state a backward-looking access to courts claim alleging that a prisoner suffered the loss of a suit that cannot now be brought, a prisoner must allege facts supporting three elements: (1) official acts that frustrated the inmate's litigation; (2) loss of a "nonfrivolous" or "arguable" underlying claim that is set forth in the Complaint,

including the level of detail necessary "as if it were being independently pursued"; and (3) specific allegations showing that remedy sought in the access to courts claim is not otherwise available in a suit that could be brought. *Id.* at 415-17.

A § 1983 access to the courts claim must be filed within two years of when it accrued to be timely, but if it implicates a criminal conviction or sentence, the rule is different. In that case, a plaintiff must consider whether *Heck v. Humphrey*, 512 U.S. 477 (1994), renders a state prisoner's § 1983 claim premature. *Heck* bars a civil rights claim if its success "would necessarily imply the invalidity of [a] conviction or sentence." *Id.* at 487. Before a plaintiff can bring a civil rights claim that would imply the invalidity of a conviction or sentence, the plaintiff must show that the conviction or sentence previously was invalidated in a procedurally proper action, such as a direct appeal, state post-conviction matter, or federal habeas corpus case. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). If the invalidation pre-requisite is not met, the civil rights claim is not ripe.

The statute of limitations for a § 1983 claim that is dependent upon a prior state court action to invalidate a conviction does not begin to run until the conviction is reversed, expunged or declared invalid, because the § 1983 cause of action does not arise until the state court action is completed. *See Heck*, 512 U.S. at 489; *Harvey v. Waldron*, 210 F.3d 1008, 1015-16 (9th Cir. 2000).

The *Heck* rule has been applied to access to courts case in the Ninth Circuit. *See, e.g., Delarm v. Growe*, No. 215CV2258KJMKJNP, 2016 WL 1722382, at *3 (E.D. Cal. Apr. 29, 2016); *Collins v. Corr. Corp. of Am.*, No. 3: 10-cv-0697 RCJ V, 2011 WL

768709, at *2 (D.Nev. Jan.26, 2011); *Cole v. Sisto*, Civ. No. S–09–0364 KJM P, 2009 WL 2230795, at *4 (E.D.Cal. July 24, 2009) (relying on *Nance v. Vieregge*, 147 F.3d 589 (7th Cir. 1998)).

Here, Plaintiff asserts that he would be a free citizen but for IDOC employees' actions in thwarting his efforts to properly pursue his direct appeal and his state post-conviction action. Plaintiff also asserts that his lost claims might have been successful in a federal habeas corpus action, but now those claims may be dismissed as being procedurally improper because of the state court dismissal brought about by the IDOC employees' actions. All of these allegations imply the invalidity of his convictions and sentences. Accordingly, these claims presently are barred by *Heck v. Humphrey* and will be dismissed without prejudice, awaiting proper invalidation of Plaintiff's convictions and sentences.

## REVIEW OF PLAINTIFF'S MOTION TO RECONSIDER

Plaintiff asks the Court to reconsider its decision to separate old and new prison conditions claims into different actions because some of the claims that might otherwise be barred by a traditional statute of limitations defense may be saved by a "relation back" or a "continuing course of conduct" argument. The motion will be granted only to the extent that the Court will consider any relation back or continuing course of conduct arguments Plaintiff made in his amended complaint when the Court reviews it.

Plaintiff is correct that exhaustion is not a pleading requirement, but he is mistaken that the Court has requested his related grievance information for the purpose of

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 5**

considering exhaustion. The Court ordered Plaintiff to file an "Amended Complaint containing claims that were exhausted[1] before August 8, 2020."

In that amended complaint, Plaintiff was required to state factual allegations showing that his claims were timely. He also was ordered to set forth any equitable tolling or estoppel arguments associated with those claims. If Plaintiff is relying on grievances to support any of his timeliness arguments, he was ordered to attach those grievances or explain the content of those grievances if available.

The Court clarifies that the grievances were required not to determine the administrative exhaustion issue, which is not a pleading requirement, but only to determine whether the statute of limitations is to be extended based on *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) (The statute of limitations is tolled while the inmate exhausts administrative grievance procedures pursuant to the Prison Litigation Reform Act (PLRA)).

## RECONSIDERATION OF PLAINTIFF'S MOTION TO SEAL

Earlier in this matter, Plaintiff requested, and the Court granted, subject to reconsideration, a request to seal the Complaint and other filings in this case. Dkts. 4, 14. As a result, most other filings, including the Court's Orders, have been sealed. Plaintiff's

---

[1] "Exhaust" in this context means (1) that the grievance was processed through the established prison grievance system and was concluded according to prison grievance policies, or (2) that prison officials stopped Plaintiff's grievance and that the grievance process was therefore unavailable after that point. *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (holding that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA"). Either situation will require documentation and/or a written explanation to aid the Court in the timeliness analysis.

request is based on his representation that "the complaint involves Plaintiff's personal mental health information and other highly personal matters which should not be public record." Dkt. 4, p. 1. He also fears retaliation because IDOC personnel can access his complaint on the Internet. *Id*., p. 2.

The public has a recognized right to inspect and copy public records and documents, including those filed with the courts. *United States v. Doe*, 870 F.3d 991, 996-97 (9th Cir. 2017); *Kemakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point" in a court's analysis of whether to seal the record. *Kemakana*, 447 F.3d at 1178 (citations omitted). Only two types of documents are traditionally kept secret: "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Id*. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id*. at 1179 (citation omitted).

When a plaintiff puts personal health at issue by filing a lawsuit, that does not give the plaintiff grounds to have the entire case sealed. *Gable v. Washington Corr. Ctr. for Women*, No. 3:18-CV-05266-RBL-TLF, 2018 WL 5295809, at *2 (W.D. Wash. Oct. 25, 2018). In such a case, consistent with the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. 104-191 (1996) (regulating use and disclosure of "Protected Health Information"), courts regularly seal from public view a plaintiff's medical and

mental health records *Aguilar v. Koehn*,  No. 3:16-CV-0529-MMD-CBC, 2018 WL

4839021, at 2 (D. Nev. Oct. 4, 2018). Accordingly, Plaintiff's medical and mental health

records should be sealed in this case.

Plaintiff also argues, but has provided insufficient information to show, that

potential retaliation by prison employees is a sufficient reason to seal this case. Dkt. 4, p.

2. The prison employees who are named defendants already have access to the sealed

complaint and other sealed documents. Plaintiff has not shown that other IDOC

employees who are not defendants would have an interest in researching this case online

or an interest in retaliating against Plaintiff because he sued a different set of IDOC

employees.

Consistent with the reasoning in the cases cited above, the Court will unseal all

documents in this case except for Plaintiff's medical and mental health records. That

standard shall be used in all of Plaintiff's severed or new cases going forward.

## EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Plaintiff seeks the following temporary or preliminary injunctive relief in this

case:

- an order "that the Defendants cannot use my mental ailment and suicidal
  ideation (that they caused) as an excuse to deny me access to courts, legal
  assistance and materials, book or whatever else is necessary"; and

- an order "that they immediately start to treat me for my accute suicidal
  ideation."

Dkt. 25, p. 1 (verbatim).

A temporary restraining order or preliminary injunction should be issued only if a plaintiff can show that (1) there are "serious questions going to the merits," (2) there is a "a balance of hardships that tips sharply towards the plaintiff," (3) "there is a likelihood of irreparable injury," and (4) "the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A request can be granted only if "the facts and law clearly favor the moving party." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994). The United States Supreme Court has cautioned the federal courts not to interfere with the day-to-day operations of the prisons, especially those things related to security, a task which is best left to prison officials who have particular experience in dealing with prisons and prisoners. *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff has made substantially the same allegations and requests regarding access to the courts and retaliation in four cases pending in the United States District Court for the District of Idaho: Docket Nos. 14, 24, and 246 in *Williams v. Fox*, Case No. 1:16-cv-00143-DCN  ("Case 143"); Docket Nos. 29, 31, 65, 84, 99, 115, 117, and 119 in *Williams v. McKay*, Case No. 1:20-cv-00008-REP ("Case 008"); Docket Nos. 3, 8, 9, 11, 16,  21, 23, 26, 27, 11, 45, 46, and 49 in *Williams v. Paralegal Lifang*, Case No. 1:22-cv-00052-DCN ("Case 52"); and Docket No 25 in this case, *Williams v. Atencio*, 1:22-cv-00346-BLW ("Case 346"). The large number of emergency motions regarding access to the courts shows not only that Plaintiff has ample access to the courts, but that he is filing repetitive motions, which wastes judicial resources.

The record in each of Plaintiff's cases shows that he has adequate access to the courts. He is a prolific litigator who files numerous documents often in all of his cases. Plaintiff consistently files repetitive motions based on his position that he should have different copying and delivery privileges, and he files unnecessary motions for the Court to rule on his motions in a speedier manner. For example, in Case 052, Plaintiff has 13 motions currently pending, including a "Motion to Immediately Rule on Long Pending Motion for Emergency Injunctive Relief – Expedited Review Requested," a "Motion for Final Dispositive Ruling," a Motion the Court Provide a Copy of Latest Filings of Plaintiff," a "Motion to Review the Second Amended Complaint," a "Motion that the Court Provide Plaintiff with a Copy of Second Amended Complaint," a "Motion to Compel IDOC to Provide Plaintiff a Copy of Second Amended Complaint, a "Motion to Amend the Complaint and for an Order for IDOC Defendants to Provide Plaintiff with a Copy of Pending Filed Complaint," a "Emergency Preliminary Injunction Motion," a "Motion for an Immediate Ruling on Plaintiff's Emergency Injunctive Motion," a "Motion for Expedited Review of Filed Emergency Injunctive Motions," and a "Motion to Review Superseding Second Amended Complaint." See Docket in Case 052. Plaintiff filed all of these motions between July 2022 and March 2023.

Plaintiff filed an appeal of Judge Nye's denial of his motion for a preliminary injunction in Case 052. The United States Court of Appeal for the Ninth Circuit held that Plaintiff failed to demonstrate that such relief is warranted and denied Plaintiff's motion to establish protocols for e-filing. Dkt. 43.

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 10**

As Plaintiff asserted in his original pleadings and has shown in several of his other civil rights cases, he now has a seven-year history of going back and forth between refusing to verbally confirm to prison officials that he is not suicidal and reporting to them that he is suicidal. Both behaviors result in him being placed on suicide watch until he cooperates with officials to verbalize that he is not suicidal and officials determine, according to professional standards, that he is not. Much government time and many resources in the prison, attorney general's office, and the courts have been expended over the questions of whether Plaintiff has the federal constitutional protections needed, even though his allegations are contradictory and at times his sincerity is suspect.

When Plaintiff made similar allegations and requests related to suicide ideation in Case 008, the parties stipulated to appointment of a court expert, psychologist Craig Beaver, to evaluate Plaintiff for risk of suicide. Dr. Beaver reported that Plaintiff had a relatively low risk of suicide as of April 1, 2021. Dkts. 93, 94, 112 in Case 008.

After release from the suicide watch unit, Plaintiff was moved to the Idaho Maximum Security Institution (IMSI), where he could remain under closer observation. Dkts. 90-1, 106 in Case 008. On or about May 31, 2022, during litigation of Case 143, Plaintiff reported that he was suicidal just before a scheduled trial. Dkts. 246, 251, 257 in Case 143. Plaintiff was given the benefit of the doubt on his sincerity, and Judge Nye continued the jury trial.

A shift commander in the suicide watch unit reported that, on May 23, 2022, Plaintiff had stated: "I hope that you keep me on watch in medical because I have court at

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 11**

the end of the month, and I can tell the Judge that IMSI staff did not property [sic] allow

to get my paperwork and access to courts." Dkt. 250-1, p. 2, in Case 143. To provide

Judge Nye assurances that Plaintiff was receiving mental health evaluations and

appropriate access to courts opportunities, and that Plaintiff's conditions and

opportunities were regularly documented in case he asked to postpone trial again or

claimed that he was denied access to the courts tools during trial, Judge Nye ordered the

IDOC prisoner legal assistant and a mental health professional to consistently file reports,

twice monthly, for the six months preceding trial in Case 143.

This Court has reviewed those reports filed in Case 143 and none shows that either

Plaintiff was suicidal or that that he was not able to access the courts in a reasonable

manner (see access to courts logs accompanying each report). See Case 143: Dkt. 328,

filed 12/28/2022; Dkt. 326, filed 12/14/2022; Dkt. 319, filed 11/30/2022; Dkt. 302, filed

11/16/2022; Dkt. 291, filed 11/02/22; Dkt. 279, filed 1019/22; Dkt. 269, filed

10/05/2022; Dkt. 266, filed 09/07/2022; Dkt. 261, filed 08/24/2022; Dkt. 258, filed

08/10/2022; Dkt. 256, filed 07/27/2022; Dkt 254, filed 06/28/2022; and Dkt. 253, filed

06/15/2022.

Plaintiff represented himself during the jury trial in Case 143 on November 14-17,

2022. From the face of that record, it does not appear that Plaintiff reported suicidal

ideation but litigated his case by himself on each of the days of trial. See Docket in Case

143. Judge Nye made special trial-only arrangements for delivery of filings and orders

during expedited pretrial and trial proceedings with the IDOC's access to courts

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 12**

personnel, with which IDOC staff reported compliance. See, e.g., Dkt. 276; Dkt. 291-1

(Plaintiff "began requesting e-filing and copy services pertaining to this case. All

documents were filed and returned to him cell side per Court Order.").

The Case 143 report from December 14, 2022, reports that Tia Leeflang, the

facility legal assistant, aided Plaintiff with seven access to courts requests between

November 11, and December 9, 2022 (Dkt. 326-1). Also, Justin Barnes, a licensed

professional counselor, noted that (1) between June 10, 2022, when Plaintiff was released

from suicide watch, and December 13, 2022, Plaintiff had returned to his assigned

housing in B Block and had no further incidents; (2) Plaintiff could submit health service

request forms to access mental health services if needed; and (3) Plaintiff had three

follow up encounters regarding his stay in suicide watch, but he "engaged in minimal

non-verbal interactions with staff or chose not to engage." Dkt. 326-2.

As to Plaintiff's claims that prison officials are thwarting his access to necessary

copying services for his litigation, Judge Nye and Judge Patricco have found the claims

unfounded. In Case 052, Judge Nye opined:

> Plaintiff's "Motion for Emergency Injunction" (Dkt. 11)
> requests the following immediate relief: (1) prevent
> Defendants from making copies of his documents submitted
> for e-filing or photocopying; (2) order Defendants to provide
> Plaintiff with a different and more reliable copy and e-file
> service; (3) prevent Plaintiff from being harmed or retaliated
> against by Defendants and monitor his welfare. After Plaintiff
> filed his motion, he  appeared in Court several times in Case
> 143, and he has continued to file numerous motions, none of
> which show that his filing ability has been impaired. In
> another of Plaintiff's cases, a United States Magistrate Judge
> carefully and thoroughly reviewed Plaintiff's allegations that

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 13**

> IDOC officials had placed him in harm's way; those
> allegations were unfounded. *See* Case No. 1:20-cv-00008-
> REP, *Williams v. McKay* ("Case 008").

Dkt. 25, p. 20, in Case 052. As noted above, the Ninth Circuit Court of Appeals agreed

with Judge Nye that Plaintiff's allegations did not warrant preliminary injunctive relief.

In this case, there is insufficient evidence to show that prison officials are

thwarting his efforts to litigate his cases or that, in the absence of injunctive relief, prison

officials would do so. Rather, both the prison and the Courts are well within the bounds

of the law to impose reasonable restrictions on Plaintiff to curtail his wasteful practices.

Judge Nye, Judge Patricco, and this Court all have found that Plaintiff does not

have the right to dictate how his copies will be made or how his legal papers will be

delivered to him, and yet he continues to file the same type of motions. See Dkt. 45 in

Case 52; Dkt. 112 in Case 008; Dkt. 14 in Case 346 (this case).

In assessing Petitioner's request that he was entitled to greater access to courts

tools than were provided him on suicide watch, Judge Patricco found:

> Mr. Elia reported that Dr. Campbell was the mental health
> unit's decisionmaker regarding Plaintiff's housing placement
> in and release from the nonacute suicide watch. Clinicians
> working under Dr. Campbell have the ability to approve or
> disapprove of the level of access to the courts Plaintiff
> received while on suicide watch, because their highest
> concern was restricting the means whereby Plaintiff might
> harm himself. The Court agrees that this is an appropriate
> primary concern—ensuring that Plaintiff remains protected
> from harming himself to the extent possible.

Dkt.112, pp. 10-11.

In response to Plaintiff's renewed motion, Judge Patricco found:

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 14**

> Plaintiff cannot decide which measures prison officials must take to protect his life when he suggests that he is suicidal. Prisoners may try to choke or suffocate themselves with paper files. They may attempt to stab themselves with regular pens, which may not inflict death, but could seriously damage the eyes, nose, ears, mouth, or throat. Plaintiff's personal health is more important than whether he can pursue a legal matter exactly how he wants to, when he wants to…. If Plaintiff believes that the access-to-court procedures are inadequate to protect his interests in this or any other case, he may request stays in his cases until he is released from the suicide watch unit. Each presiding judge, of course, will separately consider his requests for a stay upon the particular facts of the case before that judge.

Dkt. 121, p. 2 in Case 008.

Neither Judge Nye nor Judge Patricco thought it was more important for Plaintiff to have certain tools to carry on his litigations while on suicide watch than it was for Plaintiff to be safe from potentially harming himself with such tools. This Court agrees. Judges are not mental health professionals and are not on hand to see the day-to-day mental health condition of Plaintiff.

The Court also agrees that filing a motion for extension of time is Plaintiff's best tool for ensuring that he will have an adequate opportunity to litigate after he emerges from suicide watch. Prison officials have been made aware that he must have this opportunity—via dictation to a scribe outside his cell or via minimal access to courts tools if the tools are at that time approved by his mental health providers. See Dkt. 112 in Case 008.

Plaintiff's personal safety is the paramount concern. The Court will not issue the order requested by Plaintiff that IDOC officials not use Plaintiff's "mental ailment and

**ORDER OF SEVERANCE AND ORDER ADDRESSING PENDING MOTIONS - 15**

suicidal ideation (that they caused) as an excuse to deny [him] access to courts, legal assistance and materials, book or whatever else is necessary." Dkt. 25, p. 1. Plaintiff must follow the designated access-to-courts systems—both in regular housing units and in suicide watch units. He is not permitted to dictate to mental health providers what he can and cannot have while he is on suicide watch.

Nor will the Court order IDOC officials to "immediately start to treat [Plaintiff] for [his] acute suicidal ideation." *Id*. The Court is not a medical or mental health provider. Plaintiff must follow the proper steps provided for requesting medical and mental health services. There is no evidence in the record that Plaintiff is not being treated for suicide ideation, or that, in the absence of an injunction, prison medical and mental health providers would not do so. The record, and even Plaintiff's pleadings, show the opposite—that he is placed and kept in suicide watch whenever he refuses to confirm he is not suicidal or he reports that he is suicidal. Providers err on the side of saving Plaintiff's life, whether or not he is sincere about his suicide ideation.

To safeguard Plaintiff's concerns about being able to pursue this action, the Court will permit Plaintiff to file a motion for extension of time whenever he needs to do so as a result of prison limitations on legal materials in suicide watch cells. He may also request a stay if his condition appears to warrant a long stay in the suicide watch unit. In addition, the Court generally issues an "Order for Plaintiff to act" if it sees that a prisoner has not timely responded to a pending dispositive motion, rather than simply considering the

motions on one-sided briefing. These accommodations should ensure that Plaintiff's right to access the court is safeguarded in this action.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motions for an Extension of Time to File Amended Complaints (Dkts. 15, 21) are GRANTED. The Amended Complaints (Dkt. 23, 24) are considered timely.

2. Plaintiff's Motion to Stay Deadline of Amended Complaint (Dkt. 17) is DENIED as MOOT, as an extension has been granted.

3. Plaintiff's Motion for Reconsideration (Dkt. 18) is GRANTED to the extent that the Court will consider his new argument in the successive review orders.

4. Plaintiff's Motion to Seal Amended Complaint (Dkt. 22) is DENIED.

5. Plaintiff's access to courts claims regarding loss of his direct appeal, post-conviction action, and federal habeas corpus claims are DISMISSED without prejudice as unripe.

6. The Clerk of Court shall sever Plaintiff's claims asserted in Docket 23 into a new case, as directed above. A copy of Docket No. 23 and this Order shall be docketed in the new case.

7. The Amended Complaint at Docket 24 will remain the operative pleading in this case. For clarification, the Court will strike the

Amended Complaint at Docket 23, as it is being filed as the operative complaint in Plaintiff's new case, as explained above.

8. Plaintiff's Emergency Motion for Injunctive Relief (Dkt. 25) is DENIED.

9. The Clerk of Court shall unseal everything in this case except Plaintiff's medical and mental health records filed by any party, which shall remain sealed. In the future only Plaintiff's medical and mental health records filed by any party shall be filed under seal, without a motion of party showing that a document should be sealed for security reasons.

DATED: March 20, 2023

B. Lynn Winmill
U.S. District Court Judge